IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| CARISA LYNETTE BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13-3298-CV-S-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Carisa Lynette Brown seeks judicial review of the Commissioner of Social Security's ("Commissioner") decision denying her applications for Social Security Disability Insurance under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found Plaintiff had multiple severe impairments, including bursitis, arthralgia,[1] epicondylitis,[2] chronic back pain, depression, panic disorder with agoraphobia, and obesity, but retained the residual functional capacity ("RFC") to perform work as a final assembler and as a table worker.

Because the ALJ's opinion is supported by substantial evidence on the record as a whole, the Commissioner's decision is AFFIRMED.

---

[1] Arthralgia is "[s]evere pain in a joint, especially one not inflammatory in character." *PDR Medical Dictionary* 149 (Marjory Spraycar ed., 1995).

[2] Epicondylitis is "[i]nfection or inflammation of an epicondyle," which is "[a] projection from a long bone near the articular extremity above or upon the condyle." *Id.* at 582. A condyle, in turn, is "[a] rounded articular surface at the extremity of a bone." *Id.* at 380.

## Procedural and Factual Background

A complete summary of the record is presented in the parties' briefs and repeated here only to the extent necessary. Plaintiff filed the pending applications on October 19, 2010, alleging a disability onset date of September 23, 2010. After the Commissioner denied her application, Plaintiff requested an ALJ hearing. On May 3, 2012, the ALJ found that Plaintiff was not disabled. The Social Security Administration Appeals Council denied Plaintiff's request for review on May 22, 2013, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

**Discussion**

The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014) (describing the five-step process).

Plaintiff contends that the ALJ committed errors affecting multiple steps in the disability determination process. Specifically, Plaintiff moves the Court to reverse and remand to the Commissioner because the ALJ: (1) discredited evidence from Plaintiff and her doctor; (2) formulated an incorrect RFC; and (3) did not consider the effects of Plaintiff's obesity on her impairments. Each argument lacks merit.

### I. The ALJ properly evaluated the record evidence to determine Plaintiff's impairments.

Plaintiff argues that the ALJ erred in her treatment of evidence offered by Plaintiff and by Donald McGehee, Ed.D. ("Dr. McGehee").

#### A. The ALJ permissibly found Plaintiff to be not credible.

Plaintiff first asserts that the ALJ erred in disbelieving her testimony as it related to the severity of her impairments. Physically, she claimed that she experiences extreme pain in her arms, back, and knee, and that the pain sometimes inhibits her from leaving her bed. R. at 205–14. Mentally, she claimed that she isolates herself from people, cannot sleep, forgets what she is doing, has trouble focusing and concentrating, angers frequently, and thinks of killing people. R. at 81–83. The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her alleged] symptoms [we]re not credible." R. at 48. Plaintiff argues that the ALJ did not sufficiently justify this finding.

To determine the severity of a claimant's impairments, the ALJ must first determine how much weight to give the claimant's subjective complaints of pain. *Ellis v. Barnhart*, 392 F.3d 988, 995–96 (8th Cir. 2005). The ALJ must base her credibility findings on the entire record including: medical records; statements by the plaintiff and third parties; the plaintiff's daily activities; the duration, frequency, and intensity of pain; the dosage, effectiveness, and side effects of medications; precipitating and aggravating factors; and functional restrictions. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). The court must defer to the ALJ's credibility findings so long as they are "supported by good reasons and substantial evidence, even if every factor is not discussed in depth." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (internal citation omitted).

The ALJ articulated several well-supported reasons for discounting Plaintiff's credibility. First, objective medical evidence strongly contradicts Plaintiff's allegations regarding her physical limitations. *E.g.*, R. at 287–88 (lumbar spine magnetic resonance imaging scan was normal), 344 (same), 320 (examination of arm yielded unremarkable results, and Plaintiff could "ambulate[] without an obvious limp"), 302 (one week after knee surgery, Plaintiff was "doing relatively well postoperatively" and was "ambulatory without assistive equipment"), 427 (noting a "[n]ormal range of motion" in the musculoskeletal system). Objective medical evidence also contradicts her allegations regarding her mental limitations. *E.g.*, R. at 192–93 (agency disability counselor observing Plaintiff had no problems with reading, understanding, coherency, concentration, talking, or answering questions). The ALJ permissibly believed this substantial record evidence over Plaintiff. *See Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (permitting the ALJ to discount subjective complaints that are inconsistent with the record).

Second, Plaintiff's physicians prescribed conservative treatments, such as a forearm band, pain medication, and ice. R. at 334, 434, 442. This pattern of conservative treatment weighs against Plaintiff's credibility. *See Moore v. Astrue*, 572 F.3d 520, 525 (8th Cir. 2009) (finding that the claimant's alleged disabling pain was inconsistent with his ability to control his pain through medication); *Benskin v. Bowen*, 830 F.2d 878, 884 (8th Cir. 1987) (finding that treatment through hot showers and doses of Advil and aspirin did not evince disabling pain).

Third, Plaintiff frequently failed to seek treatment for her impairments because she was supposedly awaiting approval for Medicaid benefits. R. at 71, 87. However, the medical records show that she had insurance and health benefits during the relevant time periods. R. at 335, 432. This failure to seek medical care, despite the apparent means to do so, undercuts her allegations. *See Murphy v. Sullivan*, 953 F.2d 383, 386–87 (8th Cir. 1992) (rejecting the claimant's excuse that she did not pursue treatment due to financial hardship, because the claimant introduced no evidence that she did not qualify for low-cost medical treatment).

Fourth, no objective medical evidence supports the full extent of Plaintiff's alleged limitations. As to Plaintiff's physical limitations, no medical consultant ever directed her to use supportive or assistive devices on an ongoing basis. R. at 49. As to her mental limitations, Plaintiff provided "no history of psychiatric treatment other than taking Zoloft medication prescribed by her general physician." R. at 53. Rather, when the ALJ asked why she could not work, her response described only physical impairments. R. at 76–77. The dearth of supporting evidence in record suggests that Plaintiff's limitations were self-imposed. *See Brown v. Chater*, 87 F.3d 963, 964–65 (8th Cir. 1996).

Fifth, despite her alleged disabling pain, Plaintiff engaged in exertionally demanding activities such as roller skating. R. at 320. As the ALJ persuasively noted, if Plaintiff's

5
Case 6:13-cv-03298-DGK   Document 13   Filed 09/30/14   Page 5 of 10

testimony "is to be believed, she certainly would not have been physically or mentally able to be out roller skating." R. at 50; *see McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) ("[The claimant's] reports that he gardened, drove, and helped his children get ready for school are inconsistent with his reports of disabling pain.").

The Court also notes her testimony is contradicted by statements to treatment providers. Plaintiff testified that she has had back pain continuously since age thirteen. R. at 88. However, when Plaintiff was treated in the emergency room for nausea and body aches, she denied back pain. R. at 410. In August 2010, she reported that she had only a two-week history of low back pain. R. at 327. These inconsistent statements hurt her credibility. *See Conklin v. Barnhart*, 206 F. App'x 633, 636 (8th Cir. 2006) (per curiam) (sustaining the ALJ's adverse credibility determination where the claimant made "various inconsistent statements").

Finally, Plaintiff is separated, does not work outside the home, and cares for three children and her disabled brother. R. at 69, 196, 456–57. She stands to receive more money in disability benefits than she would from working, which cuts against her credibility. *See Ramirez v. Barnhart*, 292 F.3d 576, 581 n.4 (8th Cir. 2002) ("[A] claimant's financial motivation may contribute to an adverse credibility determination when other factors cast doubt upon the claimant's credibility.").

In sum, substantial record evidence supports the ALJ's rejection of Plaintiff's subjective complaints of pain.

### B. The ALJ properly gave Dr. McGehee's opinion limited weight.

Plaintiff next asserts that the ALJ should have relied more on an opinion by Dr. McGehee, who assigned Plaintiff a GAF score of 21 and diagnosed her with several severe

6
Case 6:13-cv-03298-DGK   Document 13   Filed 09/30/14   Page 6 of 10

psychological disorders.[3] The ALJ withheld evidentiary weight from these parts of Dr. McGehee's opinion. R. at 53. Plaintiff argues that this was error because "no evidence in the record specifically contradict[s] the opinions of Dr. McGehee" (Doc. 7, at 39).

The ALJ should accord a treating physician's opinion controlling weight so long as it is well-supported by medically acceptable diagnostic techniques and not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c); *Myers v. Colvin*, 721 F.3d 521, 525 (8th Cir. 2013). Nonetheless, an ALJ may discount or disregard a treating physician's opinion where it is inconsistent with other substantial evidence in the record, such as additional medical evidence or the claimant's testimony. *Myers*, 721 F.3d at 525.

Here, Dr. McGehee's opinion deserves little weight. Despite his extreme findings, he contemporaneously noted that Plaintiff was neat and clean in appearance, appropriately dressed, had adequate personal hygiene, had adequate eye contact, exhibited no bizarre or unusual gestures or mannerisms, was cooperative, related well with Dr. McGehee, had clear, logical, and coherent speech, was not psychotic, was fully oriented, and functioned in the low average range of intelligence. R. at 365–68. Six months later, he completed another form that did not cite psychotic, delusional, or hallucinatory thinking like he did in his previous evaluation. R. at 402–05. Multiple other medical providers found Plaintiff to appear well, be in no acute distress, be alert and oriented, have normal mood, affect, behavior, judgment, and thought content, and have no reported depression or memory loss. R. at 276, 289, 306, 412, 416, 427, 429, 438, 446, 448. Accordingly, substantial record evidence supports the ALJ's decision to reject Dr. McGehee's more extreme opinions about Plaintiff's mental limitations.

---

[3] The Global Assessment of Functioning ("GAF") is a numeric scale ranging from 0 to 100, representing the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32–34 (4th ed. rev. 2000). A GAF score of 21 indicates delusions and hallucinations, serious impairment in communication or judgment, or inability to function in almost all areas. *Id.* at 34.

## II. The ALJ rendered a proper RFC.

The ALJ found Plaintiff has the RFC to "perform sedentary work . . . except that she is limited to: occasionally pushing and pulling with the upper extremities; occasional contact with supervisors, coworkers and the general public; and to simple instructions and simple repetitive tasks." R. at 47. Plaintiff argues that the ALJ improperly determined her RFC because "the ALJ has offered no . . . supportive medical evidence" (Doc. 7, at 36).

An RFC is the most an individual can still do despite her physical or mental limitations. 20 C.F.R. § 404.1545(a)(1). An ALJ must determine a claimant's RFC based on all of the record evidence, including medical records, third party observations, and the claimant's own descriptions of his limitations. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). The ALJ must account for all of the claimant's medically determinable impairments, both severe and non-severe. 20 C.F.R. § 416.945(a)(2). An RFC is fundamentally a "medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).

Plaintiff's treatment records amply support the RFC finding. Diagnostic tests of Plaintiff's back, shoulder, and left elbow yielded unremarkable results. R. at 287–88, 320, 344, 450, 452. Plaintiff's knee problems were resolved with surgery. R. at 302–04. Discharge notes in 2011 showed that Plaintiff was "able to ambulate without difficulty" and with a "steady gait". R. at 440, 452. After excluding the limitations Plaintiff herself suggested, the ALJ formulated an appropriate RFC. *See Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006) (requiring an RFC formulation to include only the claimant's credible limitations).

Plaintiff argues that this RFC determination is flawed because the ALJ did not order a psychiatric review technique ("PRT"). "When mental impairments are present, the PRT is

8
Case 6:13-cv-03298-DGK   Document 13   Filed 09/30/14   Page 8 of 10

mandatory" unless the ALJ's failure to complete the PRT is "harmless error." *Cuthrell v. Astrue*, 702 F.3d 1114, 1117, 1118 (8th Cir. 2013). Here, the record does not contain a PRT. However, the ALJ noted that Dr. McGehee "assessed [Plaintiff] to have one or more mental disorders falling in every category of the [PRT] form except for substance addiction or pervasive developmental disorders," which Plaintiff does not argue are at issue here. R. at 52. Because Dr. McGehee functionally rendered a PRT, and because overwhelming evidence in the record supports the ALJ's RFC formulation, the ALJ committed only harmless error by failing to procure a form specifically called a PRT.

### III. The ALJ properly considered Plaintiff's obesity because the record indicated no limitations imposed by the obesity.

The ALJ found that Plaintiff had obesity, a severe impairment. R. at 46. The ALJ discussed typical limitations imposed by obesity. R. at 51 (citing SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002)). However, she noted that Plaintiff "did not describe functional limitations due to obesity," and her independent review of the record "show[ed] no specific reference to obesity as a functionally limiting or exacerbating condition, and no recommendation/treatment plan to lose weight." R. at 51. Plaintiff now complains that the ALJ "neglected to evaluate the effects of her obesity *in combination* with her other impairments pursuant to SSR 02-1p" (Doc. 7, at 31).

Because Plaintiff did not introduce any evidence of her obesity's effects, the ALJ committed no error in her obesity analysis. *See King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009) (placing the burden on the claimant to show that she is disabled through Step Four). Although Plaintiff argues that the ALJ should have more fully developed the record, such efforts are generally required only when the record is patently deficient or inconsistent. *See Pinkston v. Colvin*, 13-CV-539-DGK-SSA, 2014 WL 2960958, at *3 & n.4 (W.D. Mo. June 30, 2014). The

record here shows that even though Plaintiff made many visits to various medical providers, none of these providers remarked that Plaintiff's obesity imposed great limitations. Accordingly, the record was not patently deficient or inconsistent, so the ALJ carried no duty to develop the record.

## Conclusion

Because substantial evidence on the record as a whole supports the ALJ's opinion, the Commissioner's decision denying benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date:  September 30, 2014             /s/ Greg Kays
                                     GREG KAYS, CHIEF JUDGE
                                     UNITED STATES DISTRICT COURT